*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CYNTHIA AIKEN; JANET CARTER; and REGIONAL ALCOHOL AND DRUG ABUSE COUNSELOR TRAINING PROGRAM, | ) ) ) ) |
| | ) |
| Appellants and Cross-Appellees, | ) ) |
| | ) |
| v. | ) ) |
| ALASKA ADDICTION PROFESSIONALS ASSOCIATION; NAADAC, THE ASSOCIATION FOR ADDICTION PROFESSIONALS; DIANE OGILVIE; and AKEELA, INC., | ) ) ) ) ) ) ) |
| | ) |
| Appellees and Cross-Appellants. | ) ) ) |

Supreme Court Nos. S-18096/18495

Superior Court No. 3AN-15-11523 CI

O P I N I O N

No. 7706 – July 19, 2024

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: John W. Colver, Colver & McMillan, LLC, Anchorage, for Appellant and Cross-Appellee Cynthia Aiken. Heather Gardner, Anchorage, for Appellants and Cross-Appellees Janet Carter and RADACT. Sean Halloran, Anchorage, for Appellees and Cross-Appellants.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

# I. INTRODUCTION

This appeal arises out of a dispute over control of a nonprofit corporation. Unbeknownst to the corporation's directors and members, the corporation was dissolved by the State due to the executive director's failure to pay taxes and fees and renew corporate registration. Nevertheless, the directors and members continued to carry on the group's mission and activities, unaware that the group had lost corporate status. After these problems were brought to light, several people active in the group filed paperwork to incorporate an entity using the same name, occupying the same offices, doing the same work, and claiming the same bank account. When the nonprofit's national affiliate proposed holding elections so members could elect a new slate of board members, the people who had filed the recent incorporation paperwork denied that the entity they had incorporated was the same entity that had been dissolved. They claimed that the "new" corporation was neither affiliated with the national group nor subject to control by members of the "old" corporation. Nevertheless, elections were held and new directors were chosen to replace the individuals who had registered the "new" corporation.

This dispute led to sprawling litigation, involving many parties, to decide who had authority to act on behalf of the "new" corporation. After extensive pretrial proceedings and a lengthy trial, the superior court decided that the "new" corporation was essentially the same entity, with the same members, as the "old" corporation. The court therefore concluded that the disputed election was valid and that the individuals elected had authority to act on behalf of the corporation. The court ruled that the individuals who had filed the incorporation paperwork had been ousted and no longer had authority to act on behalf of the corporation. The court awarded attorney's fees to the prevailing parties but exempted the individual litigants from liability for attorney's fees.

On appeal the unsuccessful litigants challenge the superior court's rejection of their various procedural defenses and the court's ruling on the core question

of who controls the corporation. They also challenge the court's rejection of third-party claims they leveled against others. We largely affirm the superior court's rulings but vacate and remand its dismissal of one third-party claim for more detailed explanation of its ruling.

The prevailing parties cross-appeal the court's decision to excuse the individual litigants from liability for attorney's fees, arguing that the court's reason for this ruling was invalid. We agree and vacate and remand the superior court's fees order for further proceedings.

## II.   FACTS AND PROCEEDINGS

### A.   Parties

Because this case involves many parties, sometimes acting in different capacities, we begin by describing the key actors.

**The Alaska Addiction Professionals Association (AAPA)** is a nonprofit organization active in the field of substance abuse treatment. The group has an objective to present an "Annual School on Addiction Studies" (Annual School) and other training events. Control of this organization is in dispute.

**Diane Ogilvie (Ogilvie)** purports to serve as the president of the AAPA board of directors.

AAPA is an Alaska affiliate of **NAADAC, the Association for Addiction Professionals**,[1] a national 501(c)(6) educational institution. NAADAC provides professional development opportunities for addiction professionals, advocates for public policy, and issues certifications and endorsements to addiction professionals and training programs. NAADAC maintains that Ogilvie was officially elected as president of the AAPA board of directors in 2015.

---

[1]     This group was originally known as the National Association of Alcoholism and Drug Abuse Counselors. Although the group changed its name when it expanded to include all addiction professionals, it kept its original acronym, NAADAC.

**The Regional Alcohol and Drug Abuse Counselor Training Program (RADACT)** is an Alaska nonprofit that trains addiction counselors. **Janet Carter (Carter)** is the founder and executive director of RADACT. **Cynthia Aiken (Aiken)** is the president of the RADACT board of directors. RADACT maintains that Aiken, Carter, and their allies have lawful authority to act as governing members of the AAPA board of directors.

**Akeela, Inc. (Akeela)** is an Alaska nonprofit offering substance abuse and mental health treatment programs. Akeela sends its staff to RADACT for training. Ogilvie was an Akeela employee until August 2017. Akeela is minimally involved in the dispute over AAPA control.

This appeal arises from a lawsuit by AAPA and NAADAC against Aiken, Carter, and RADACT. The lawsuit alleged that Ogilvie, not Aiken or Carter, is the rightful president of AAPA and sought to prevent Aiken and Carter from acting on behalf of AAPA. When referencing actions AAPA and NAADAC collectively undertook during the proceedings, we refer to the "Plaintiffs." When referencing motion practice and other actions Aiken, Carter, and RADACT collectively undertook during the trial proceedings, we refer to the "Defendants."

## B. Facts

The State of Alaska has funded the Annual School in Anchorage since the 1980s. The event was first presented by an academic organization, but the State later asked the directors of local organizations to form a nonprofit corporation that would organize the event each year. In 1998 the Substance Abuse Directors Association (SADA) incorporated as nonprofit entity No. 63552-D. The parties dispute whether, in 2010, SADA changed its name to the Association for Addiction Professionals (AAPA)

or merged with an existing unincorporated association called "AAPA."[2]  In any case, the organization named AAPA affiliated with NAADAC later that year.  SADA, and then AAPA, presented the state-funded Annual School each year between 1998 and 2013.  RADACT assisted SADA and then AAPA in organizing the Annual School during this period.

Carter served on SADA's board of directors when the organization incorporated but left the board in 2000, although she may have continued to play some role in the organization's governance.  Aiken served for some time as SADA's treasurer.[3]

In 2011 the State of Alaska revoked AAPA's status as a nonprofit corporation because the organization failed to file its biennial report or pay its biennial taxes and fees for the period ending in July 2010.  The Internal Revenue Service (IRS) subsequently revoked AAPA's federal tax exemption because the organization had failed to file required tax returns for three consecutive years.  These changes went unnoticed by AAPA's members and board of directors.  During the period in which it was not incorporated, AAPA continued to receive membership dues, present the Annual School, pay for an office and employees, and maintain a board of directors that managed its affairs.  NAADAC continued to carry liability insurance on AAPA and recruited for membership and membership renewals on AAPA's behalf.

---

[2]        Carter and RADACT contend that AAPA did not exist prior to 2010.  But AAPA and NAADAC maintain that AAPA existed as a separate entity for a number of years before merging with SADA in 2009.

[3]        Aiken stated in her affidavit that she ceased serving as SADA's treasurer in 2007, and in an email to NAADAC stated that she "did not act in the official capacity of treasurer after the name was changed to AAPA."  But Aiken stated in her deposition that she was AAPA's treasurer in 2013.  And a 2014 police report named Aiken as AAPA's treasurer.

In late 2013 AAPA's executive director informed Aiken that there was no money left in AAPA's bank account. In early 2014 Aiken initiated an audit of the organization and discovered that AAPA's corporate status had been revoked and that the executive director had embezzled tens of thousands of dollars from the organization. Aiken reported her discoveries to the police, and AAPA's executive director was charged with theft and fraud. AAPA's executive director ultimately entered into a plea deal in which the court ordered her to pay restitution to AAPA.

In January 2014 Aiken and Carter filed paperwork to establish a nonprofit corporation named AAPA using a different corporate entity number, with Aiken, Carter, and two other individuals listed as the corporation's directors. Aiken also applied for and received tax exempt status for this corporation with the IRS under the same Employer Identification Number (EIN) associated with the lapsed AAPA entity.

According to Aiken and Carter, in February 2014 the State requested that RADACT host the May 2014 Annual School because the State could not fund the conference through an association that lacked nonprofit status with the IRS. Promotional and informational materials for the 2014 Annual School featured the AAPA logo and language suggesting that AAPA hosted the conference. The materials identified Carter as "the AAPA vice chair." A former state employee testified that the State, which had provided funds directly to AAPA in prior years, directed funds to RADACT in its capacity as a "fiscal agent for [AAPA]." Aiken represented that RADACT used its nonprofit EIN for the Annual School's silent auction and dealt with "[a]ll contracts . . . and bills."

During the 2014 Annual School, Aiken held an information session to explain AAPA's status and the embezzlement charges against AAPA's former executive director. The executive director of NAADAC attended that meeting. NAADAC subsequently sent Aiken, Carter, and others a letter via email explaining NAADAC's position on AAPA's legal status, board of directors, and assets. NAADAC asserted that it continued to act as AAPA's "parent organization" and would reorganize

the AAPA board of directors pursuant to the affiliate agreement between the two organizations. NAADAC acknowledged that Aiken and Carter had "[taken] on the responsibilities and duties of [AAPA board] positions and were de facto Board members." Nevertheless, NAADAC stated that it would take steps to remove Aiken and Carter from all AAPA positions. NAADAC also requested they transmit all AAPA paperwork in their possession and the 2014 Annual School proceeds to NAADAC.

Aiken and Carter responded by disputing many of NAADAC's assertions. Aiken and Carter claimed that AAPA had never been affiliated with NAADAC because it did not file updated bylaws outlining the affiliate arrangement with the State or the IRS. Aiken and Carter also stated that AAPA would not affiliate with NAADAC in the future.

Meanwhile, RADACT presented the 2015 Annual School with state funds and without crediting AAPA.

In June 2015 NAADAC convened an "AAPA Revitalization Meeting" in Anchorage. Seven AAPA members attended the meeting, including two who participated by phone; 25 others turned in proxy votes in advance. Those members elected a new slate of directors to manage AAPA, including Ogilvie as president. The elected officers submitted the June 2015 meeting minutes and a letter from NAADAC to Wells Fargo Bank and gained access to AAPA's bank account.

In September 2015 Aiken noticed unfamiliar transactions on AAPA's bank account. Aiken told the bank that the officers elected by AAPA membership in June 2015 did not represent the organization, but the bank refused to allow her to make changes to the account and instructed her to seek legal counsel. Aiken then filed a consumer complaint against the bank with the State. The bank froze AAPA's account. In the weeks that followed, Ogilvie notified the State that AAPA had changed its officers and registered agent.

In March 2016 NAADAC notified Carter that RADACT would have to seek NAADAC's approval in order to confer qualifying continuing education hours for those attending the 2016 Annual School. Carter declined to seek this approval.

NAADAC and the newly elected AAPA board instead organized an "Annual Training Institute" to be held on the same weekend in 2016 as RADACT's Annual School. Ogilvie sent an email to Alaska providers representing the following: (1) Aiken and Carter had resigned from the AAPA Board at the 2014 Annual School information session; (2) "non-AAPA/NAADAC individuals decided to take over the school without involving the proper parties"; and (3) "[a]fter 20 months of working to collaborate with RADACT and the Annual School and receiving no response or support," the elected AAPA board had decided to produce a competing conference, the Annual Training Institute. The elected AAPA board and at least one ally of NAADAC advertised that RADACT's Annual School lacked NAADAC certification and would not confer continuing education credit to attendees, whereas the Annual Training Institute would confer such credits.

### C. Proceedings

#### 1. Claims, counterclaims, and third-party claims

In December 2015 Aiken, in her own name and purportedly on behalf of AAPA, filed a complaint against Ogilvie in her individual capacity seeking a declaratory judgment that Aiken had lawful authority to act as a governing board member of AAPA.

The next day AAPA and NAADAC filed their own complaint against Carter, Aiken, and RADACT seeking a declaratory judgment that the AAPA board elected in June 2015 rightfully controlled the organization.[4] The Plaintiffs also sought

---

[4] The parties dispute who is entitled to litigate in AAPA's name. Because we agree with the superior court's conclusion that Ogilvie and other directors elected in 2015 were the rightful board of AAPA, *see infra*, part IV.E, we refer to the party that those directors control as "AAPA" throughout this decision.

injunctions: (1) prohibiting Aiken from representing that she controlled or was authorized to act on behalf of AAPA and from accessing AAPA's bank accounts; (2) requiring Carter to return certain files;[5] (3) preventing Aiken, Carter, and RADACT from representing that their annual conference was accredited by NAADAC; and (4) barring Carter and RADCAT from using the name "Annual School."

Aiken voluntarily dismissed her lawsuit against Ogilvie. She then filed counterclaims in the remaining lawsuit over control of AAPA. Aiken's counterclaims sought a declaration that Aiken and her allies were the rightful officers of AAPA and were entitled to take custody of its bank accounts and that the June 2015 "AAPA Revitalization Meeting" election was invalid because the election was not held in compliance with AAPA's bylaws. Aiken later sued Ogilvie as an individual defendant on these counterclaims.

Carter, individually and on behalf of RADACT, filed her own counterclaim. Carter sought declarations that AAPA did not own the name "Annual School" and that she was an authorized NAADAC provider who could use NAADAC's name. The counterclaim also requested injunctions prohibiting NAADAC from tortiously interfering with Carter and RADACT's business relationships or the Annual School, and damages.

Finally, Carter and RADACT filed a third-party claim against Ogilvie in her individual capacity and against Akeela. The complaint accused Ogilvie and Akeela of tortiously interfering with RADACT and Carter's business relationships by attempting to divert state funding from RADACT's Annual School and by defaming Carter and RADACT through the lawsuit over AAPA control. The complaint requested similar declarations, injunctions, and damages to those requested in Carter's counterclaim against AAPA and NAADAC.

---

[5] Carter later complied and this request became moot.

### 2. Summary judgment against Carter's third-party claims

In June 2017 Ogilvie and Akeela moved for summary judgment on Carter and RADACT's third-party claims against them. Ogilvie and Akeela argued that the allegations in Carter and RADACT's complaint failed to establish the prima facie elements of tortious interference with business relationships.

Carter and RADACT opposed the motion, citing a number of instances in which Ogilvie and Akeela allegedly attempted to interfere with Carter and RADACT's production of the Annual School. They claimed that Carter and RADACT had lost "monetary market share" when approximately 100 individuals attended NAADAC's Annual Training Institute instead of RADACT's concurrent 2016 Annual School. Carter and RADACT also attached an affidavit from Carter stating that she had personally suffered harm to her professional relationships as a result of Ogilvie and Akeela's alleged interference.

The superior court denied the motion for summary judgment against RADACT's tortious interference claim, ruling that there remained a genuine factual dispute about "the alleged actions of [Ogilvie and Akeela] relative to the 2016 Annual School and RADACT's loss of revenue from substance abuse professionals attending the competing school." But the court granted summary judgment against Carter's tortious interference claim, ruling that she had "not identified any possible pecuniary loss to her," and therefore failed to satisfy "a requirement for a valid tortious interference with a prospective business opportunity claim."

### 3. Cross-motions for summary judgment and Defendants' motion to dismiss

In 2018 the parties moved for summary judgment on the original claims and counterclaims. The parties disputed, among other things, whether the Plaintiffs' claims were barred by statutes limiting the time for bringing claims on behalf of a corporation after it has been dissolved. The superior court denied both motions and

subsequent motions to reconsider because it determined that genuine disputes of material fact remained.

The superior court presided over a 14-day trial between September 2019 and August 2020. Early in the trial the Defendants made an oral motion that (1) repeated their summary judgment argument about limits on claims of a dissolved corporation and (2) asked the court to dismiss NAADAC from the lawsuit for lack of capacity to sue.[6]

The superior court again rejected the Defendants' argument that the claims were time-barred by statute, reiterating that material factual disputes remained. The court also rejected the Defendants' capacity argument. The court stated that it would address the issue in detail in its final written decision.

### 4. Superior court's findings and conclusions

The superior court issued an order in April 2021 resolving the parties' claims, counterclaims, and third-party claims. The court held that Ogilvie was the rightful president of AAPA and that the officers named in AAPA and NAADAC's complaint were the rightful officers of the organization. The court also enjoined the Defendants from using the name "Annual School" for any future events and dismissed Carter's tortious interference claim for lack of standing.

In its substantive discussion of the issues, the superior court first concluded, as a factual matter, that SADA had merged with a preexisting unincorporated association called AAPA in 2009 or 2010. Noting that Alaska law does not require merger filings when one of the joined entities is an unincorporated

---

[6] AAPA and NAADAC assert that Aiken alone brought the motion to dismiss. Although NAADAC's opposition refers to "the defendants' motion," the reply was filed by Aiken alone.

association, the superior court concluded that only a name change was necessary to effect the merger.

Second, the superior court ruled that AAPA did not cease to exist when the State dissolved the corporation in 2011. Although the group's "corporate shell" ceased to exist, the superior court explained, the organization itself persisted as an unincorporated association.

Third, the superior court ruled that the entity the parties were fighting to control, the nonprofit corporation named "AAPA" that Carter and Aiken registered in 2014, was the same organization as the unincorporated association that existed from 2011 to 2014, which in turn was the same organization as the AAPA whose corporate status was dissolved in 2011. The superior court reached this conclusion because the entity registered in 2014 had: (1) used the same name as its predecessor; (2) taken over its predecessor's bank account; (3) claimed restitution payments from the criminal proceedings over funds embezzled from its predecessor; (4) populated its board of directors with individuals who had held director offices in its predecessor; (5) occupied its predecessor's office; (6) taken possession of its predecessor's records; (7) presented the 2014 Annual School under the name "AAPA"; and (8) assumed its predecessor's federal tax ID number.

Fourth, the superior court reasoned that AAPA's assets "should remain the property of the membership that generated them," and thus stay under the control of AAPA leadership elected by members in June 2015 — i.e., Ogilvie and the other officers named in AAPA's complaint. The court observed that the funds in AAPA's bank account consisted primarily of membership dues and embezzlement restitution (which represented stolen membership dues and Annual School proceeds).

Fifth, the superior court granted the Plaintiffs' requested declaratory and injunctive relief: that RADACT and its officers could not present a competing program using the name "Annual School" or claiming to be a continuation of AAPA's conference.

Sixth, the superior court reiterated its dismissal of Carter's third-party tortious interference suit. The court explained that Carter lacked standing because she did not present "sufficient evidence that she, separate and apart from RADACT, had actual contacts or prospective economic relationships that are addressed by her claims."

Finally, the superior court stated that all "other issues that the various parties may have argued throughout the course of litigation, but [were] not addressed [in its order], [were] considered moot or denied." The court also dismissed "all claims against the individuals involved as Defendants and Third-Party Defendants, finding that they acted in their professional roles in their respective organizations, and further finding no evidence to support any claims that they are personally liable for those actions in their individual capacities." Despite its earlier statement, the court did not explain its previous ruling that NAADAC had capacity to sue.

Aiken, Carter, and RADACT appealed this order.

### 5.    Attorney's Fees

AAPA, NAADAC, Ogilvie, and Akeela moved for costs and attorney's fees totaling over $65,000. Aiken and Carter opposed the motions and filed their own motions for attorney's fees, arguing that they were the prevailing parties because the court had not held them personally liable for their actions.

In December 2021 the superior court issued an order awarding attorney's fees to AAPA, NAADAC, Akeela, and Ogilvie. The superior court characterized Aiken and Carter's representations that they had prevailed in the litigation as "patently false" because "the main issue in this case was never about personal liability." Yet the court then awarded attorney's fees against RADACT only, "not against any parties personally, as no parties in this case have been found to be personally liable."

AAPA, NAADAC, Akeela, and Ogilvie cross-appealed the superior court's decision to award fees against RADACT but not against Aiken and Carter.

## III. STANDARD OF REVIEW

We review factual findings for clear error and uphold those findings unless we are "left with a definite and firm conviction on the entire record that a mistake has been made."[7]

"We review questions of law and a superior court's application of the law to facts de novo, using our independent judgment to 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[8]  We likewise interpret statutes using our "independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[9]

"The decision to award attorney fees rests in the discretion of the trial judge, and is reviewable on appeal only for an abuse of discretion."[10]  "An abuse of discretion exists if the award was 'arbitrary, capricious, manifestly unreasonable, or [if it] stemmed from an improper motive.' "[11]

## IV. DISCUSSION

On appeal Aiken, Carter, and RADACT make several arguments.  They argue that key factual findings the superior court made were clearly erroneous or insufficient to explain its decision.  They also raise various procedural defenses to NAADAC and AAPA's claims.  Aiken, Carter, and RADACT challenge the court's ruling on the merits as well — namely that Aiken and Carter did not have authority to

---

[7]     *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) (quoting *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005)).

[8]     *McCavit v. Lacher*, 447 P.3d 726, 731 (Alaska 2019) (quoting *Riddle v. Lanser*, 421 P.3d 35, 44 (Alaska 2018)).

[9]     *Johnson v. State, Dep't of Corr.*, 380 P.3d 653, 655 (Alaska 2016).

[10]    *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 376 (Alaska 1989).

[11]    *Alaska Wildlife All. v. State*, 74 P.3d 201, 205 (Alaska 2003) (alteration in original) (quoting *Tenala, Ltd. v. Fowler*, 993 P.2d 447, 449 (Alaska 1999)).

act on AAPA's behalf.  Carter and RADACT also challenge the court's dismissal of their third-party tortious interference claims against Ogilvie and Akeela.

We see no factual errors that warrant reversal and are not persuaded by Aiken, Carter, and RADACT's procedural defenses.  We also affirm the superior court's merits ruling.  We affirm the court's rejection of the tortious interference claims against Ogilvie, but hold that the court failed to make adequate findings on RADACT's (but not Carter's) third-party claim against Akeela.

On cross-appeal AAPA, NAADAC, Akeela, and Ogilvie challenge the court's order excusing Aiken and Carter individually from paying attorney's fees.  We hold that the court's stated reason for exempting them from personal liability for fees cannot sustain its ruling and remand for further proceedings.

### A. There Are No Reversible Errors In The Superior Court's Findings Of Fact.

Aiken, Carter, and RADACT argue there are two sets of factual errors in the superior court's order:  (1) mistaken dates relevant to the dispute over control of AAPA, and (2) the court's finding that AAPA existed as an unincorporated association before it merged with SADA in 2010.  We agree that the dates described in the court's order are mistaken, but the error is harmless.  And we see no clear error in the finding regarding AAPA's existence before 2010.

First, Aiken, Carter, and RADACT point out that the superior court incorrectly stated that NAADAC's executive director attended the 2013 Annual School and organized the AAPA revitalization meeting, electing new board members, on May 5 of that year.  In fact, NAADAC's executive director attended the *2014* Annual School, at which Aiken explained the embezzlement charges against AAPA's former executive director.  The superior court also misstated that there was a "struggle over who constituted the rightful board in 2013" and that the two factions put on competing conferences in 2014.  NAADAC did not convene its AAPA revitalization meeting until 2015, and the competing "Annual Training Institute" was held in 2016.

Yet Aiken, Carter, and RADACT fail to show why these errors warrant reversal. They argue that the mistake about the date of NAADAC's AAPA revitalization meeting is significant because that event, if held in 2013, would have been "the only action by any party that is inside the two-year statute of limitations under AS 10.20.450." But that limitations statute does not apply to this case, as we explain below.[12]

Aiken, Carter, and RADACT also suggest that the court's date errors reveal a more fundamental misunderstanding of events, calling into question the reliability of its other findings. But it is clear from the organization and logic of the court's ruling that it understood the essential sequence of events, including the fact that Aiken and her allies filed incorporation paperwork and formed a board of directors *before* NAADAC convened a membership meeting to elect a different board. The court's references to incorrect dates appear to be nothing more than typographical errors. And because we have no reason to believe these typographical errors affected the court's legal analysis, we deem them harmless.[13]

Second, the court's finding that AAPA existed as an unincorporated association with members before merging with SADA in 2010 is not clearly erroneous. NAADAC's executive director testified that NAADAC had been working with AAPA for 35 years and collecting dues from AAPA members since before 2010. Aiken, Carter, and RADACT argue that this testimony was "demonstrably false on its face," asserting that AAPA only came into existence in 2010. But the superior court was entitled to credit this testimony, and it is consistent with other evidence, including

---

**12**     *See, infra*, part IV.B.

**13**     *See Kinnan v. Sitka Counseling*, 349 P.3d 153, 158 (Alaska 2015) ("The test for determining whether an error was harmless is whether on the whole record the error would have had a substantial influence on the [trier of fact]." (alteration in original) (quoting *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012))).

AAPA records showing members whose enrollment predates 2010. It is the trial court's job to weigh conflicting evidence. On this point, we are not "left with a definite and firm conviction on the entire record that a mistake has been made."[14]

**B.     Alaska Statute 10.20.450 Does Not Bar The Plaintiffs' Claims.**

Aiken, Carter, and RADACT argue that the claims against them are barred because they are untimely under the statute governing the survival of a corporation's remedies at law after the corporation is dissolved.[15] But this statute does not apply to the claims at issue in this case because they are not claims that preexisted AAPA's corporate dissolution in 2011. Instead the claims are based on actions taken by Aiken, Carter, and RADACT after AAPA's dissolution.

Dissolution of a corporation by the State "does not take away or impair a remedy available to or against the corporation, its directors, officers, or members, for a right or claim existing, or a liability incurred, before dissolution if an action or other proceeding is commenced within two years after the date of dissolution."[16] If the

---

[14]     *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) (*Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005)).

[15]     AS 10.20.450 (allowing claims arising before dissolution to be brought within two years after date of dissolution). AAPA and NAADAC contend that we may not consider this argument because the superior court denied summary judgment to the Defendants on factual grounds. AAPA and NAADAC are correct that typically an order denying summary judgment based on the existence of disputed material facts is unreviewable on appeal. *Larson v. Benediktsson*, 152 P.3d 1159, 1170 (Alaska 2007). But the question here is whether the claims the Plaintiffs asserted are subject to AS 10.20.450's two-year limitation period, which depends on the nature of the allegations in the complaint. This is, at least in part, a legal question. *See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1271 (Alaska 2013) ("The date on which a claim accrues is a factual question, which we review for clear error. However, . . . we review de novo questions regarding the applicable statute of limitations, the interpretation of that statute, and whether that statute bars a claim." (citations omitted)). We therefore consider Carter and RADACT's argument.

[16]     AS 10.20.450.

remedy belongs to a dissolved corporation, the claim may be pursued by its members or officers in the name of the corporation.[17]

Aiken, Carter, and RADACT argue that this statute bars the Plaintiffs' claims, but the argument is somewhat confusing. They assert that the claims against them asserted by AAPA, with Ogilvie acting as its president, are derived solely from Ogilvie and other officers' membership in AAPA before it was dissolved. According to this theory, the claims are untimely because they were not filed within two years after dissolution.

But the premise of this argument is clearly belied by the wording of the complaint. AAPA and NAADAC's complaint does not purport to bring claims that existed before dissolution, which occurred in 2011. The complaint describes conduct by Aiken, Carter, and RADACT from 2014 to 2016 as the basis for AAPA's claims against them. For example, the complaint asserts that "Cynthia Aiken fraudulently began to assert that she was president of AAPA in or about May 2015." The basis for the complaint's request for injunctive and declaratory relief is the allegation that in 2015, after Aiken and Carter were replaced by newly elected directors, they had no authority to act on behalf of AAPA. Nothing in the complaint suggests that the claims asserted by AAPA were "claim[s] existing, or a liability incurred, before dissolution"[18] of AAPA in 2011. Even if Ogilvie and her fellow officers' membership in AAPA predated its dissolution, that does not mean that the claims they asserted in AAPA's name arose before dissolution.

---

[17]    *Id.*

[18]    *Id.*

The nature of AAPA and NAADAC's claims did not change over the course of trial.[19] This is apparent because the claims the court resolved in its final order mirrored those in the amended complaint. The court ruled that "Aiken and her designees are not the current officers or directors of AAPA." It found that a separate slate of officers, including Ogilvie as board president, was duly elected by AAPA membership after the corporation was dissolved.[20] It ruled that Aiken and her cohort lacked authority to act on behalf of AAPA, to operate the Annual School, or to access AAPA's bank accounts. Reviewing the relief the court granted based on its independent factual findings, it is clear that the court's rulings in favor of the Plaintiffs turned on claims that arose after dissolution, not before. For that reason, AS 10.20.450 does not apply to this case.

## C. Alaska Statute 10.20.452 Does Not Bar Plaintiffs' Claims.

Aiken, Carter, and RADACT argue that the claims against them are barred by AS 10.20.452, which authorizes the continued existence of a corporation, through its board of directors, for five years after dissolution to convey or transfer interests in the corporation's property.[21] But this argument fails for similar reasons as the argument

---

[19] *See* Alaska R. Civ. P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment . . . .").

[20] The court stated that the new board was elected in May of 2013, when NAADAC's executive director came to Alaska for the Annual School and held a meeting to sort out the dispute over control of AAPA. As we explained above, the meeting in question actually occurred in June 2015, but the court's error on this point was harmless because it did not have a substantial influence on its broader factual and legal determinations.

[21] AS 10.20.452 ("If a dissolved corporation is the owner of real or personal property, or claims an interest in or lien upon real or personal property, the corporation through its board of directors continues to exist for five years after the date of

based on AS 10.20.450: The Plaintiffs' claims do not primarily concern the property of a dissolved corporation. The claims raise the broader question of who has authority to act on behalf of a corporation in good standing. Alaska Statute 10.20.452 therefore does not bar AAPA and NAADAC's claims.

### D. The Superior Court Did Not Err By Rejecting The Defendants' Motion To Dismiss NAADAC For Lack Of Capacity To Sue.

Aiken, Carter, and RADACT argue that the superior court should have granted their motion to dismiss NAADAC from the lawsuit for lack of capacity to sue under AS 10.20.605, which they presented orally to the court during the trial. We disagree.[22]

Under AS 10.20.605, "[a] foreign corporation transacting business in the state without a certificate of authority may not maintain an action, suit, or proceeding in a court of the state until it obtains a certificate of authority." Alaska Statute 10.20.460 in turn provides a nonexhaustive list of activities that do not constitute "transacting business in the state." These activities include:

> (1) maintaining or defending any action or suit . . . ; (2) . . . carrying on . . . activities concerning . . . internal affairs; (3) maintaining bank accounts; (4) securing or collecting debts, or enforcing rights in property securing debts; (5) transacting business in interstate commerce; (6) granting funds; (7)

---

dissolution for the purpose of conveying, transferring, or releasing the real or personal property or interest in or lien upon the property. In addition, a dissolved corporation through its board of directors continues to exist for the purpose of being made a party in an action or proceeding arising before dissolution and involving the title to real or personal property or an interest in it.").

[22] AAPA and NAADAC contend that Aiken, Carter, and RADACT waived the argument that NAADAC lacked capacity to sue under AS 10.20.605 because Aiken, Carter, and RADACT failed to raise the issue in a pretrial motion. However, the superior court did not rule that the argument was waived, and instead addressed the argument on the merits. Therefore we too address the argument on the merits.

distributing information to members; [and] (8) conducting an isolated transaction . . . .[23]

Aiken, Carter, and RADACT maintain that NAADAC lacked capacity to sue because it transacted business in Alaska without obtaining a certificate of authority. Because lack of capacity to sue is an affirmative defense,[24] the Defendants bore the burden of presenting evidence that NAADAC conducted activities in Alaska that amounted to transacting business for purposes of the statutory bar.[25]

Aiken, Carter, and RADACT assert that the superior court denied their motion without explanation in its post-trial ruling on the merits, but this is not exactly the case. The superior court denied the Defendants' motion orally on the second day of trial. The court stated that it had reviewed the Plaintiffs' written opposition to the oral motion, describing the opposition as "well taken." The court stated that it had reviewed the case law and statutes cited and concluded that "a corporation in this situation is not excluded from the court having jurisdiction." The court then denied the motion and stated that it would put its decision in writing later. But the court never did so. The Defendants made an extensive offer of proof in support of their motion, citing numerous exhibits that they later sought to admit at trial. Without detailed findings and conclusions by the court, it is not clear to us precisely what the court ruled and why.

Nevertheless, AAPA and NAADAC argue that we may affirm the superior court's ruling because none of the activities that Aiken, Carter, and RADACT

---

**23**    AS 10.20.460.

**24**    *Kupka v. Morey*, 541 P.2d 740, 752 n.29 (Alaska 1975).

**25**    *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 294 (Alaska 1976) ("The party raising the affirmative defense generally bears the burden of proof as to that issue.").

point to in their briefing on appeal amount to "transacting business" in Alaska.  We agree.[26]

The activities Aiken, Carter, and RADACT point to fall within the statutory exceptions to transacting business, largely because they amount to "transacting business in interstate commerce."[27]  The superior court found that "AAPA is a membership organization which collects dues in affiliation with a national parent organization, NAADAC."  The court found that NAADAC is "a national organization that works with state organizations such as AAPA."  According to the affiliate agreement between AAPA and NAADAC, the latter provides "legislative advocacy," "leadership and management training and development," "strategic planning," and "technical support," among other services.  NADAAC also performs "direct billing" for AAPA and then remits AAPA's share of membership dues.  The agreement emphasizes that NAADAC's relationship with AAPA is not "an agency, partnership, joint venture, [or] employment relationship."  Because NAADAC is a national organization headquartered in Virginia, its activities related to AAPA could amount, depending on the evidence, to "transacting business in interstate commerce."[28]

We considered the distinction between transacting business in interstate commerce and transacting business in Alaska, for purposes of a similar statute in the for-profit corporations code, in *Kachemak Seafoods, Inc. v. Century Airlines, Inc.*[29]  In that case Century, a Michigan company, leased two aircraft to Kachemak, an Alaska

---

[26]     *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012) (noting we may affirm superior court's judgment "on any grounds that the record supports, even grounds not relied on by the superior court" (quoting *Van Sickle v. McGraw*, 134 P.3d 338, 341 n.10 (Alaska 2006))).

[27]     AS 10.20.460(5).

[28]     *Id.*

[29]     641 P.2d 213, 216-17 (Alaska 1982).

company.[30] Century's president flew to Alaska later that same year to negotiate the sale of one of the aircraft to Kachemak, and upon arriving discovered that one of the planes had developed engine problems.[31] He then had a new engine and a Century mechanic flown to Alaska to replace the failed engine.[32] The sale negotiations broke down and Century later sued Kachemak for breach of contract.[33] The superior court rejected Kachemak's defense that Century could not sue because it lacked a certificate of authority to do business in Alaska.[34] We affirmed.[35] Relying on United States Supreme Court precedent, we held that the relatively brief visits by Century's president and mechanics had not "localized" its business in Alaska.[36] We reasoned that "Century's intrastate activities were incidental to its interstate leasing of aircraft" and were therefore exempt from the certification statute.[37]

The Supreme Court cases we relied on in *Kachemak* further illustrate the distinction between engaging in interstate commerce and transacting business in a state.[38] In *Allenberg Cotton Co. v. Pittman* the Supreme Court held that Mississippi could not constitutionally bar the suit of an unregistered foreign corporation that entered into contracts to purchase cotton from local farmers, even though that corporation temporarily stored the cotton in local warehouses for sorting and classification before

---

[30]     *Id.* at 214-15.

[31]     *Id.* at 215.

[32]     *Id.*

[33]     *Id.* at 215-16.

[34]     *Id.* at 216.

[35]     *Id.* at 218.

[36]     *Id.* at 217.

[37]     *Id.*

[38]     *See id.* (citing *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20 (1974); *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961)).

shipping it to other states.[39]  The Court explained that the foreign cotton merchant had not localized its business in the state because, among other reasons, it did not have an office in Mississippi or any employees operating in Mississippi on a regular basis.[40] The Court contrasted its conclusion with another decision, *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, in which it permitted New Jersey to require certification of a foreign pharmaceutical dealer that maintained a staffed office in New Jersey with 18 employees.[41]

In light of this precedent, the activities that Aiken, Carter, and RADACT highlight in their briefing were "incidental" to NADAAC's interstate provision of services to AAPA.[42]  Aiken, Carter, and RADACT argue that NAADAC transacted business in Alaska by collecting membership dues on AAPA's behalf and requesting Aiken and Carter turn over the proceeds from the 2014 Annual School.  Aiken, Carter, and RADACT do not point to any evidence that NAADAC's collection of membership dues for AAPA, and its remittance of these dues to AAPA in Alaska, entailed having an office in Alaska or employees operating in Alaska on a regular basis.  It is true that NAADAC's director visited Alaska on two occasions:  first, to attend the 2014 Annual School, and second, in 2015 to assist with AAPA's elections.  Both of these activities were "incidental" to NAADAC's interstate business of providing technical support, "leadership and management training and development," and other services to its local affiliates.

---

[39]    *Allenberg*, 419 U.S. at 23-24, 32-34.

[40]    *Id.* at 33.

[41]    *Id.* at 32-33 (citing *Eli Lilly*, 366 U.S. at 279-81).

[42]    *Cf. Kachemak*, 641 P.2d at 217 (holding that brief visits of Michigan company's president and mechanics to Alaska to resolve issue with aircraft leased by Michigan company to Alaska company were incidental to Michigan company's interstate leasing of aircraft).

Aiken, Carter, and RADACT also argue that NAADAC transacted business in Alaska when "NAADAC and AAPA, including Ogilvie, working with their common counsel, obtained access to the disputed Wells Fargo bank account and drained it, without notice to Defendants." Putting aside the lack of specificity in this assertion about what NAADAC actually did, providing assistance to a local affiliate in securing its property would have also been incidental to NADAAC's interstate business. As for the assertion that AAPA and NADAAC pursued the litigation with "common counsel," litigation is expressly excluded from the definition of "transacting business."[43]

Aiken, Carter, and RADACT further argue that NADAAC's activities did not amount to transacting business in interstate commerce because NADAAC was actually operating AAPA "as a puppet without regard to whether AAPA had any legal existence." To the extent Aiken, Carter, and RADACT mean to suggest that once AAPA lost corporate status, all actions taken by members of the dissolved corporation were attributable to NAADAC itself, that conclusion does not follow. Rather, the superior court found that after dissolution, the members of AAPA continued to act on the group's behalf, unaware that the group had lost corporate status. Aiken, Carter, and RADACT do not point to any law or provision in the affiliate agreement between AAPA and NAADAC to support the conclusion that the group's loss of corporate status meant that its members began acting on behalf of a different corporation. The affiliate agreement disclaims any employment, agency, or partnership relationship between AAPA and NAADAC. And the superior court correctly determined that under Alaska law, the people who had been members of AAPA prior to dissolution continued to act

---

[43] AS 10.20.460(1) (excluding from definition of "transacting business" "maintaining or defending any action or suit").

on behalf of the same group, with its own distinct legal status, albeit without corporate protection.[44]

In sum, Aiken, Carter, and RADACT do not point us to evidence sufficient to meet their burden of showing that NAADAC's activities in Alaska were more than merely incidental to its transaction of business in interstate commerce. We therefore reject the argument that the superior court erred by not dismissing NADAAC from the lawsuit for transacting business in Alaska without the required certificate. We may affirm the superior court's decision not to dismiss NADAAC from this lawsuit on any ground supported by the record,[45] and we conclude that the record supports the court's conclusion that NADAAC was not transacting business in Alaska without the required certificate.

## E. The Superior Court Did Not Err In Granting Declaratory And Injunctive Relief To AAPA And NAADAC.

The superior court concluded that when Aiken and Carter incorporated a nonprofit corporation named AAPA in 2014, the entity they incorporated was the same entity that had existed previously. The court reasoned that when AAPA's corporate status was dissolved, the group "merely reverted to being an unincorporated association that conducted business without any corporate shell." The court then concluded that when Carter and Aiken incorporated an entity named AAPA in 2014 ("new AAPA"), this entity was the same entity that had formerly been incorporated as AAPA ("old AAPA"), and then continued to exist as an unincorporated association. This conclusion rested on several key facts: "[N]ew AAPA" claimed the bank accounts that had

---

[44]    *See State v. Aleut Corp.*, 541 P.2d 730, 735 (Alaska 1975) (holding that traditional Aleut villages that were unincorporated had legal status of "unincorporated associations," with capacity to sue and be sued, when they were governed by bylaws, had stated purpose, had continuity despite changes in membership, and had responsible officers).

[45]    *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012).

belonged to "old AAPA"; "new AAPA" claimed the restitution payments owed to "old AAPA"; the entities used the same office and had the same federal EIN; and "new AAPA" took possession of "old AAPA's" records. Because the court found that "new AAPA" was the same entity that had been incorporated previously, it necessarily had the same membership and bylaws. Therefore the election held in 2015 by those members and pursuant to those bylaws validly resulted in the election of Ogilvie, with authority to act on AAPA's behalf, while ousting Aiken and Carter from AAPA's leadership. Although the court did not describe its conclusion precisely in this way, this logic is implicit in the court's conclusion that "Plaintiffs followed the appropriate procedure to reinstate a board" and that Ogilvie and her associates were the duly elected members of that board.

On appeal Aiken, Carter, and RADACT contest the court's conclusion that AAPA continued to exist as an unincorporated association after dissolution and that the AAPA incorporated by Aiken and Carter in 2014 was the same entity as before. They focus primarily on the court's legal reasoning and the authorities the court cited for these conclusions. Although we disagree with one aspect of the court's reasoning, the court's legal conclusion that AAPA continued to exist as an unincorporated association has support in our precedent. Our decision in *State v. Aleut Corp.* recognizes that a group of people acting together pursuant to established bylaws, for discernable purposes, and through responsible officers can have the status of an "unincorporated association" with its own legal capacity distinct from that of its individual members, even if the group lacks the legal status of a corporation.[46]

More importantly, what is dispositive here is not the legal status of "old AAPA" following its corporate dissolution. The dispositive question is whether the superior court correctly found that "new AAPA," the entity incorporated in 2014, has

---

[46]     *Aleut Corp.*, 541 P.2d at 735-36.

the same membership and bylaws as "old AAPA," the entity dissolved in 2011. If the membership and bylaws are the same, then the court's ultimate conclusion that the 2015 election conducted by those members according to those bylaws validly resulted in the election of Ogilvie and her associates to AAPA's board is correct.

Aiken, Carter, and RADACT fail to show that the court was wrong to conclude that the AAPA incorporated in 2014 is the same entity as the former AAPA. Because Aiken, Carter, and RADACT do not challenge the superior court's predicate factual findings, and because they fail to show the court's ultimate conclusion was contrary to law, we affirm the court's ruling.

The superior court was presented with two competing possibilities. One possibility was that Carter and Aiken had created "new AAPA" as a new and different corporation, without any members. But this characterization of events was inconsistent with "new AAPA's" claim to funds that had been generated by "old AAPA's" members. The other possibility, which the superior court appeared to find credible, was that "new AAPA" was created to be the same entity as "old AAPA," and that Carter and Aiken later took the position that "new AAPA" was an entirely different entity, without members, in an attempt to protect their leadership positions.

The most straightforward way of viewing the court's conclusion is that the court resolved a primarily factual question: was the AAPA incorporated in 2014 the same entity, with the same members, as the previous AAPA? The court found that the entity incorporated in 2014 was a "new corporate shell for the members' organization" and "merely a continuation of its predecessor enterprises," meaning it was composed of the same members as the previous AAPA.

Aiken, Carter, and RADACT fail to show that this finding is clearly erroneous. The court found, among other things, that the "new AAPA" had the same name, occupied the same offices, claimed the books and records that had belonged to "old AAPA," took over the bank account that had belonged to "old AAPA," and claimed ownership of the restitution payments owed to "old AAPA." These restitution

payments, the court found, "replace funds that were embezzled from AAPA's bank account in 2010 through 2013, and take the place of proceeds from and sponsorships for AAPA's Annual School, as well as dues paid by AAPA members." In other words, the court found that "new AAPA" was claiming ownership of membership dues, and restitution of embezzled membership dues, paid by members that the entity claimed not to have. As the court pointed out, Aiken and Carter failed to articulate any legitimate reason for "new AAPA" to claim those funds if it had no members. These factual findings, none of which are challenged on appeal, support the court's conclusion that "new AAPA" had the same membership as "old AAPA": the same people who were members of "old AAPA" before it dissolved and had continued to pay dues and conduct the group's business "without any corporate shell" after its dissolution.

Instead of challenging the superior court's predicate factual findings, Aiken, Carter, and RADACT point to the incorporation documents from 2014 to argue that the corporation they established had no members. But these documents do not state one way or another whether the incorporated entity has members. A nonprofit corporation's articles of incorporation are not required to state whether the corporation has members, so the lack of reference to members in the 2014 articles of incorporation does not undermine the court's conclusion.[47]

Nor do the bylaws the superior court found to govern the "new AAPA" preclude members. The court found that AAPA adopted bylaws in 2010, before its corporate dissolution. These bylaws provide for members. Aiken, Carter, and RADACT do not challenge the factual finding that "old AAPA" adopted these bylaws. Nor does their briefing attempt to explain why the court was wrong, given the unusual factual context, to conclude that these bylaws governed "new AAPA" when it had the same name, members, and other essential attributes as "old AAPA." The nonprofit

---

[47]    *See* AS 10.20.051(a) (providing that nonprofit corporation may state in bylaws, rather than articles of incorporation, whether it has members).

corporations code provides that "[t]he board of directors shall adopt the initial bylaws of a corporation."[48] Carter and Aiken asserted that the AAPA they incorporated in 2014 was subject to a set of bylaws that the State had "on file" for SADA before it merged with AAPA, and that these "old SADA bylaws" did not provide for members in the corporation. But the court could fairly decline to find Aiken and Carter had adopted these pre-2010 bylaws for the "new AAPA." Adopting bylaws that did not provide for membership was inconsistent with Aiken and Carter's claim that the "new AAPA" owned the membership dues and proceeds generated by "old AAPA's" members. It was not clear error for the court to find, based on Aiken and Carter's claim to the name, property, and records of "old AAPA," that the bylaws they adopted to govern "new AAPA" were the same bylaws that had governed "old AAPA."

Aiken, Carter, and RADACT also argue the superior court made two legal errors in its analysis. In one case, we agree with the superior court. In the other, we conclude the court's error did not affect is ultimate conclusion.

First, the superior court cited our decision in *Savage Arms, Inc. v. Western Auto Supply Co.*[49] for the proposition that "a successor is considered a 'mere continuation' of a prior entity when it continues to use the former entity's name, location, and employees, and maintains a common identity of stockholders and directors." In *Savage Arms*, the question was whether a corporation that had acquired the assets of another corporation, which had sold a defective firearm to a consumer, could be held liable for defects in the selling corporation's products.[50] "Generally, when one company sells all its assets to another, the acquiring corporation is not liable for the debts and liabilities of the selling company."[51] But in *Savage Arms* we adopted,

---

[48]    AS 10.20.056.

[49]    18 P.3d 49 (Alaska 2001).

[50]    *See id.* at 51-52.

[51]    *Id.* at 54.

for products liability claims, a widespread exception to this rule:  A purchasing corporation is liable for defects in the selling corporation's products if the purchasing corporation is a "mere continuation" of the selling corporation.[52]  Aiken, Carter, and RADACT argue that the "mere continuation" doctrine is limited to the products liability context and that the court improperly relied on *Savage Arms* by applying the concept to the facts of this case.  We disagree.  Although the "continuity of enterprise" doctrine we described in *Savage Arms* is of limited application,[53] the "mere continuation" doctrine is a widely recognized common-law rule of general application.[54]  And regardless, the superior court's reference to the "mere continuation" doctrine does not affect the factual predicate of the superior court's ruling:  that the "new AAPA" incorporated in 2014 had the same membership and bylaws as AAPA prior to dissolution.

Second, Aiken, Carter, and RADACT fault the superior court for misconstruing AS 10.20.452 to support its conclusion.  The superior court reasoned that this statute allows a corporation to continue to exist for five years after dissolution "for

---

[52]     *Id.* at 55; *see also* Phillip I. Blumberg, *The Continuity of the Enterprise Doctrine: Corporate Successorship in United States Law*, 10 FLA. J. INT'L L. 365, 371 (1996) ("The [mere continuation] doctrine . . . is applicable only where the successor has the same stockholders as the predecessor and conducts the same business with the same management, facilities, employees, products, and trade names.").

[53]     *See* 18 P.3d at 55-58 (adopting "continuity of enterprise" exception in products liability case); *Village Builders 96, L.P. v. U.S. Lab'ys, Inc.*, 112 P.3d 1082, 1090-91 & n.27 (Nev. 2005) (describing "mere continuation" doctrine and noting that courts have limited application of "continuity of the enterprise" doctrine "to cases involving claims of products liability and Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) violations").

[54]     *See Blumberg, supra* note 52, at 371-73, 375-78; *see also In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 572 (9th Cir. 2012) (recognizing generally applicable "mere continuation" exception while applying Washington law); *Beatrice Co. v. State Bd. of Equalization*, 863 P.2d 683, 690 (Cal. 1993) (recognizing "mere continuation" doctrine as part of "generally applicable" rule in California).

all purposes related to winding up the affairs of the corporation." Aiken, Carter, and RADACT point out that the statute allows a dissolved corporation to exist only "through its board of directors" and only for limited purposes. It is true that the *corporate entity* exists only in these limited respects.[55] The superior court's statement was therefore slightly imprecise. But as we have already explained, the superior court did not err in concluding that the group of people acting pursuant to AAPA's bylaws continued to have legal status as a group, distinct from the legal status of individual members, even though this status was not the same as corporate status.[56] And any imprecision in the superior court's legal analysis does not undercut the evidence supporting its findings that "new AAPA" had the same bylaws and membership as "old AAPA."

Nor does AS 10.20.452 undermine the legal significance of the court's factual findings. The statute governs what happens when a corporation is dissolved.[57] It says nothing about who has authority to act on behalf of a "new" corporation claiming the name, assets, tax ID, and other attributes of a dissolved corporation.[58] Another statute addressing the effect of corporate dissolution, AS 10.20.320, is equally silent on

---

[55] AS 10.20.452 (providing that dissolved corporation "through its board of directors continues to exist for five years after the date of dissolution for the purpose of conveying, transferring, or releasing" property or interest in property and for purpose "of being made a party in an action or proceeding arising before dissolution and involving the title to real or personal property or an interest in it").

[56] *See State v. Aleut Corp.*, 541 P.2d 730, 735 (Alaska 1975).

[57] *See* AS 10.20.452.

[58] The directors of "old AAPA" might have filed a lawsuit under AS 10.20.452 if their claim pertained solely to the property of the dissolved corporation. But the legal claims stated in AAPA and NADAAC's complaint were far broader in that they sought to determine who had authority to act on behalf of a corporation in good standing, "new AAPA." *See supra* sections IV.B & IV.C.

that question.[59]   Aiken, Carter, and RADACT fail to show that the superior court's ruling — that the AAPA incorporated in 2014 had the same members and bylaws as the previously incorporated AAPA — is contrary to any law in the corporations code or elsewhere.[60]

Aiken, Carter, and RADACT fail to show that the court erred by finding that the AAPA incorporated in 2014 had the same membership and bylaws as the previous AAPA.  Consequently, they fail to undermine the court's ultimate conclusion that Ogilvie and her associates were validly elected to the board of AAPA, with authority to act on AAPA's behalf.  We therefore affirm this ruling.

## F.   The Ruling Against RADACT's Third-Party Claim Against Akeela Lacks Sufficient Findings For Appellate Review.

Carter and RADACT argue that the superior court did not adequately explain its decision to deny their third-party tortious interference claims against Ogilvie and Akeela.  We agree with respect to RADACT's third-party claim against Akeela.

The superior court, upon completing a nonjury trial, must "find the facts specially and state separately its conclusions of law thereon."[61]   This rule requires the superior court to "deal adequately with and state with clarity what it finds as facts and

---

[59]   *See* AS 10.20.320 ("Upon the issuance of the certificate of dissolution the existence of the corporation ceases, except for the purpose of suits, other proceedings and appropriate corporate action by members, directors, and officers as provided in this chapter.").

[60]   Aiken, Carter, and RADACT argue that under AS 10.06.218 de facto corporations are not recognized in Alaska.  But this provision governs for-profit corporations.  *See* AS 10.06.005-.995.  The nonprofit corporations code does not mention de facto corporations.  AS 10.20.005-.925.  And as with the other authorities relied on by Aiken, Carter, and RADACT, the law governing de facto corporations has no bearing on whether "new AAPA" had the same membership and bylaws as "old AAPA."

[61]   Alaska R. Civ. P. 52(a).

what it holds as conclusions of law."[62]  These findings and conclusions should be sufficiently "clear and explicit as to give the Supreme Court a clear understanding of the basis for the decision made."[63]

The superior court adequately explained why it rejected Carter's third-party claims and RADACT's third-party claim against Ogilvie.  Citing *Ebli v. Department of Corrections*,[64] the court explained that Carter lacked standing to bring her third-party claims because Carter did not present "sufficient evidence that she, separate and apart from RADACT, had actual contracts or prospective economic relationships that are addressed by her claims."  The court also explained why it dismissed RADACT's third-party claim against Ogilvie:  she had acted in her professional role as the AAPA president and there was no evidence to support claims that she was liable for those actions in her individual capacity.

But the superior court did not explicitly address RADACT's third-party claim against Akeela.  When opposing Ogilvie and Akeela's motion for summary judgment, RADACT described a number of instances in which Ogilvie and Akeela allegedly attempted to "interfere" with "RADACT's annual production of the Annual School" and explained that RADACT had lost "monetary market share" when approximately 100 individuals attended NAADAC's Annual Training Institute over RADACT's concurrent 2016 Annual School.  The superior court denied the summary judgment motion as to RADACT's claims because genuine issues of material fact existed as to "the alleged actions of third party defendants relative to the 2016 Annual School and RADACT's loss of revenue from substance abuse professionals attending the competing school."

---

[62]     *Sullivan v. Subramanian*, 2 P.3d 66, 69 (Alaska 2000) (quoting *Dickerson v. Geiermann*, 368 P.2d 217, 219 (Alaska 1962)).

[63]     *Id.*

[64]     451 P.3d 382 (Alaska 2019).

Because the court denied summary judgment based on disputed facts and then rejected the claim following trial without making any pertinent factual findings, we vacate its ruling and remand for specific findings.

### G. It Was An Abuse Of Discretion To Excuse Aiken And Carter From Paying Costs And Fees On The Ground That They Had Not Been Held Personally Liable In The Litigation.

The superior court awarded attorney's fees to AAPA, NAADAC, Ogilvie, and Akeela against RADACT but not against Aiken or Carter personally. The court based this decision on the fact that it had not found either defendant personally liable in this case. AAPA, NAADAC, Ogilvie, and Akeela argue that the superior court abused its discretion. We agree.

Alaska Civil Rules 79 and 82 entitle prevailing parties to recover costs and attorney's fees, respectively.[65] Although the rules provide instructions for calculating costs and the percentage of fees for which non-prevailing parties are responsible, they also afford significant discretion to the superior court.[66] In particular, Civil Rule 82 permits the court to depart from the prescribed fee schedule because of "equitable factors deemed relevant."[67] The court was therefore not required to assess fees against Aiken and Carter.

---

[65] Alaska R. Civ. P. 79(a) ("Unless the court otherwise directs, the prevailing party is entitled to recover costs allowable under paragraph (f) that were necessarily incurred in the action."); Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[66] *See* Alaska R. Civ. P. 79(a) ("*Unless the court otherwise directs*, the prevailing party is entitled to recover costs." (emphasis added)); Alaska R. Civ. P. 82(b)(3) ("The court may vary an attorney's fee award calculated under . . . this rule if, upon consideration of [factors provided in this provision], the court determines a variation is warranted . . . .").

[67] Alaska R. Civ. P. 82(b)(3)(K).

However, it was an abuse of discretion to excuse Aiken and Carter from paying fees on the ground that "they were not found personally liable." Civil Rule 82(b)(2) provides for a 30% fee award in cases that go to trial "in which the prevailing party recovers no money judgment."[68] In other words, losing parties are not excused from fees merely because the lawsuit did not involve damages. Nothing else in the text of Civil Rule 82(b)(2) suggests that fees may be awarded against a party only if it is held "personally liable." Instead, liability for fees is determined according to which party prevails on the main issue in the case.[69] And the mandatory language of Rule 82(b)(2) ("the court *shall* award the prevailing party")[70] indicates that the superior court must assess fees against the non-prevailing party unless relevant equitable factors weigh against doing so.[71]

The fact that the court did not hold Aiken and Carter personally liable in this case is not the sort of equitable consideration that justifies departure from the prescribed fee schedule. AAPA and NAADAC sought only equitable relief from the Defendants. Ogilvie and Akeela brought no claims at all, but successfully defended against Carter and RADACT's third-party claims. Indeed, when rejecting Carter and Aiken's argument that they were the prevailing parties because they escaped personal liability, the court emphasized that "the main issue in this case was never about personal

---

[68]    Alaska R. Civ. P. 82(b)(2).

[69]    *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 327 P.3d 185, 191 (Alaska 2014) ("In assessing prevailing party status for purposes of awarding attorney's fees and costs, we have consistently held that '[t]he prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered.' " (alteration in original) (quoting *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1242 (Alaska 2013))).

[70]    Alaska R. Civ. P. 82(b)(2) (emphasis added).

[71]    *See* Alaska R. Civ. P. 82(b)(2)-(b)(3).

liability." It was inconsistent with this reasoning to excuse Carter and Aiken from liability for fees on that basis.

Carter and Aiken argue that the decision to exempt them from liability for fees may be justified by a comment the court made in its merits ruling. The court found that they "acted in their professional roles in their respective organizations, and further [found] no evidence to support any claims that they are personally liable for those actions in their individual capacities." Aiken argues that in doing so the court was "implicitly acknowledging" that it would be inequitable to award fees and costs against Aiken and Carter who, "acting professionally and on behalf of their respective organizations, had voluntarily stepped in after the involuntary dissolution of [AAPA] to help" resolve the situation. But this is not how the court explained its attorney's fees award. And we are not certain that is what the court intended to do, as the court criticized the parties for engaging in "chronophagous" litigation and expressed hope that "future, similarly-situated litigants might take heed of the high costs of litigation" when considering the possibility of settlement. Because we cannot discern a clear basis for the court's ruling other than the one we have deemed improper, we must vacate the ruling and remand for further proceedings.[72]

## V. CONCLUSION

We AFFIRM the superior court's award of declaratory and injunctive relief to AAPA and NAADAC.

We AFFIRM the court's judgment in favor of Ogilvie against the third-party tortious interference claims. We AFFIRM the court's judgment in favor of Akeela against Carter's third-party tortious interference claim. We VACATE the judgment in favor of Akeela against RADACT's third-party tortious interference claim and REMAND for more detailed findings.

---

[72] *See* Alaska R. Civ. P. 82(b)(3) ("If the court varies an award, the court shall explain the reasons for the variation.").

We VACATE the court's ruling exempting Aiken and Carter from liability for attorney's fees and REMAND for further proceedings.